UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

THE ANSCHUTZ CORPORATION,

    Plaintiff,

  v.

DEUTSCHE BANK SECURITIES, INC., *et al.*,

    Defendants.
_____/

No. C 09-03780 SI

**ORDER DENYING DEFENDANT'S MOTION TO TRANSFER VENUE**

The Court held a hearing on defendant's motion to transfer venue on March 5, 2010. For the reasons set forth below, the Court hereby DENIES defendant's motion.

**BACKGROUND**

On March 19, 2010, plaintiff The Anschutz Corporation ("TAC") filed an amended complaint against seven defendants: (1) Merrill Lynch & Co., Inc., (2) Merrill Lynch, Pierce, Fenner & Smith, Inc., (3) Deutsche Bank Securities, Inc. ("Deutsche Bank"), (4) Moody's Investors Service, Inc., (5) The McGraw-Hill Companies, Inc., (6) Fitch, Inc. and (7) Fitch Ratings, Ltd. The claims against both Merrill Lynch defendants have been transferred to the Southern District of New York by order of the Judicial Panel on Multidistrict Litigation. *See* MDL Transfer Order, Docket No. 90. Plaintiff's claims against all other defendants remain before this Court.

Defendant Deutsche Bank's motion to transfer venue is now before the Court. The claims made by plaintiff against Deutsche Bank are (1) violations of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5, (2) violations of the California Corporate Securities Law of 1968, Cal. Corp. Code §§ 25500 and 25501, and (3) common law fraud.

Plaintiff brought this action to recover damages and for other relief resulting from its purchase

of approximately $58.95 million in auction rate securities ("ARS")[1] that were underwritten by Deutsche Bank and marketed and sold to investors. Compl. ¶ 1. Plaintiff claims that it purchased defendant's securities in reliance on material omissions made, directly and indirectly, by defendant. *Id.* Plaintiff alleges that it purchased defendant's underwritten securities based upon the appearance of ready and regular liquidity for these securities that was created by the market impact of an extensive pattern of deceptive and manipulative activities by defendant in connection with the "Dutch auctions"[2] for re-marketing of these and other auction rate securities. *Id.* TAC purports to have believed that it could resell the Deutsche Bank underwritten securities, at par, in "Dutch auctions" conducted on prescheduled dates. *Id.* Plaintiff also claims to have believed that an investment in these auction rate securities would be extremely safe and highly liquid, and have virtually no risk of loss of principal. *Id.*

Between July 2006 and August 2007, plaintiff purchased auction rate securities through the San Francisco office of its agent, Credit Suisse. Plaintiff alleges that defendant played three roles in the ARS market: (1) underwriting ARS on behalf of issuers, (2) serving as dealer-brokers, therefore collecting and receiving every buy, sell or hold order for each auction, and (3) serving as a "market maker" for the ARS by placing "support bids" in many of the auctions in which defendant participated as a broker-dealer. According to plaintiff, this third role "ensured that auctions would always clear and created the artificial appearance of a liquid and efficient functioning market in which there was legitimate demand for the ARS." Opposition at 5. Plaintiff alleges that in August 2007 defendant, in response to a market showing increasing signs of strain, abandoned the practice of placing support bids. *Id.* The ARS market then collapsed, leaving plaintiff with $59 million in "highly impaired and completely illiquid securities." *Id.*

---

[1] ARS are long term or perpetual equity or debt instruments that pay interest or dividends at rates set through "Dutch auctions." Opposition at 4.

[2] A "Dutch auction" is a type of auction in which the auctioneer begins with a high asking price which is steadily lowered until it either hits a predetermined reserve price or until an auction participant is willing to pay.

2

## LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil matter to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The purpose of § 1404(a) is to "prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal citations and quotation omitted). A motion for transfer lies within the broad discretion of the district court and must be determined on an individualized basis. *See Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000).

To support a motion for transfer, the moving party must establish: "that venue is proper in the transferor district; that the transferee district is one where the action might have been brought; and that the transfer will serve the convenience of the parties and witnesses and will promote the interests of justice." *Goodyear Tire & Rubber Co. v. McDonnell Douglas Corp.*, 820 F. Supp. 503, 506 (C.D. Cal. 1992). Once venue is determined to be proper in both districts, courts use the following factors to evaluate whether a transfer of venue would be more convenient to the parties and the witnesses and would promote the interests of justice: (1) plaintiffs' choice of forum, (2) convenience of the parties, (3) convenience of the witnesses, (4) ease of access to the evidence, (5) familiarity of each forum with the applicable law, (6) feasibility of consolidation with other claims, (7) any local interest in the controversy, and (8) the relative court congestion and time of trial in each forum. *See Williams v. Bowman*, 157 F. Supp. 2d 1103, 1106 (N.D. Cal. 2001).

## DISCUSSION

The parties appear to agree that venue would be proper in either this district or in the Southern District of New York. The key dispute, therefore, is whether the transfer will serve the convenience of the parties and witnesses and will promote the interests of justice.

### I. Plaintiff's Choice of Forum

The parties dispute whether plaintiff's choice of this forum is entitled to any deference. "The general rule is that a plaintiff's choice of forum is afforded substantial weight." *Bowman*, 157 F. Supp. 2d at 1106. Where a plaintiff does not reside in the forum, however, courts afford the plaintiff's choice considerably less weight. *See Schwarzer et al.*, Federal Civil Procedure Before Trial § 4:761 (2008) (citing *New Image, Inc. v. Travelers Indem. Co.*, 536 F. Supp. 58, 59 (E.D. Pa. 1981); *Bryant v. ITT Corp.*, 48 F. Supp. 2d 829, 832 (N.D. Ill. 1999)). Courts also give the plaintiff's choice of forum less weight if the forum "lacks any significant contact with the activities alleged in the complaint." Federal Procedure § 4:763 (citing *Chrysler Capital Corp. v. Woehling*, 663 F. Supp. 478, 482 (D. De. 1987); *Mamani v. Bustamante*, 547 F. Supp. 2d 465, 473 (D. Md. 2008)).

Plaintiff contends that its choice of forum is entitled to considerable deference, citing the Exchange Act's nationwide service of process provision. The Ninth Circuit has interpreted the venue and jurisdiction provisions of that statute "to grant potential plaintiffs liberal choice in their selection of a forum, and unless the balance of factors is strongly in favor of the defendants, the plaintiff's choice of forum should rarely be disturbed." *Securities Investor Prot. Corp. v. Vigman*, 764 F.2d 1309, 1317 (9th Cir. 1985). Defendant argues that plaintiff's choice of forum should be afforded little to no weight, because plaintiff resides in Kansas, with its principal place of business in Colorado. Defendant cites a number of cases that stand for the proposition that the normal deference granted to plaintiffs in a motion to transfer venue is based on the assumption that a plaintiff is filing in its home district. *See, e.g.*, *Williams*, 157 F. Supp. 2d at 1106. "The degree to which courts defer to the plaintiff's chosen venue is substantially reduced where the plaintiff does not reside in the venue." *Id.* The Court agrees with defendant that because plaintiff does not reside in this district, plaintiff's choice of forum should not be the determining factor in deciding whether to grant the motion to transfer. Even without the Court giving significant deference to plaintiff's choice of forum, however, defendant still must demonstrate that "the transfer will serve the convenience of the parties and witnesses and will promote the interests of justice." *Goodyear Tire*, 820 F. Supp. at 506.

## II. Convenience of the Parties, Convenience of Witnesses, and Ease of Access to Evidence

Defendant is headquartered in the Southern District of New York, and plaintiff is headquartered in Kansas with its principal place of business in Colorado. Defendant argues that the location of its headquarters would make litigation in the transferee district "vastly more efficient and cost-effective." Plaintiff does not offer any significant contention to the contrary, other than the fact that Credit Suisse, a non-party in this case, is located in San Francisco. The convenience of the parties in this case therefore favors defendant's motion to transfer venue.

Defendant further asserts that the convenience of witnesses and ease of access to evidence favor its motion to transfer. Defendant argues that since it is headquartered in New York, and much of the alleged conduct originated in New York, most of the witnesses and documents will likely be located in New York, as well. Defendant's Motion at 15. Defendant argues that while some documents may be located in plaintiff's offices in Kansas and Colorado, nearly all of defendant's documents will be located in New York. Therefore, defendant claims, New York would be a more efficient and convenient forum with respect to the evidence to be used at trial. Plaintiff contends that defendant should have identified the witnesses and evidence located in New York because defendant has the burden of showing that transferring venue would be beneficial. Plaintiff names four non-party witnesses from Credit Suisse that are located in the Northern District of California, and would therefore be greatly inconvenienced by a change in venue. Additionally, plaintiff points out that Deutsche Banks's London office played an important role in structuring the securities that defendant underwrote. Plaintiff also notes that the only source of proof that can be definitively identified at this stage in the case is from the San Francisco branch of non-party Credit Suisse. Since defendant does not identify witnesses who would be inconvenienced by a trial in California or provide a convincing argument that a significant amount of the relevant evidence is located in New York, neither the convenience of witnesses nor ease of access to the evidence favors the motion to transfer venue.

5

**III.     Familiarity of Each Forum with the Applicable Law**

Plaintiff has brought this lawsuit under the federal securities laws, the California blue sky laws, and California common law. Defendant contends that plaintiff's claim under the California Corporate Securities Law is invalid because non-California residents cannot bring a claim for injuries allegedly "caused by conduct occurring outside California's borders, by defendants whose headquarters and principal places of operations are outside California." *Norwest Mortgage, Inc. v. Sup. Ct.*, 72 Cal. App. 4th 214, 224-225 (Cal. App. 1999). Although defendant's headquarters are indisputably outside of California, it does not appear plaintiff's claimed injuries were "caused by conduct outside California's borders." *Id*. Plaintiff alleges that "Deutsche Bank, directly or indirectly, induced TAC to purchase securities from an agent in the State of California." Compl. ¶ 175. Since plaintiff's claimed injuries were caused at least in part by conduct within California, defendant's arguments regarding the inapplicability of California securities laws are invalid.

If transfer to the Southern District of New York is granted, "the transferee district court generally must apply the state law that the transferor district court would have applied had the case not been transferred." *Shannon-Vail Five, Inc. v. Bunch*, 270 F.3d 1207, 1210 (9th Cir. 2001). Plaintiff makes the point that a federal court located in California is more familiar with the application of California law than a federal court in New York would be. Defendant counters that the Southern District of New York is more familiar with auction rate securities cases involving defendant, citing the *Pivot Point* case, an auction rate securities class action filed against Deutsche Bank that was before Judge Preska, the transferee judge, at the time the transfer motion was filed. *Pivot Point Cap. Master LP v. Deutsche Bank AG & Deutsche Bank Securities, Inc.*, Case No. 08-CV-2788. The Court finds that this factor is at best neutral for defendant, and does not support the motion for transfer of venue.

**IV.     Feasibility of Consolidation with Other Claims**

A significant portion of each of the parties' briefs was devoted to the plausibility of the consolidation of this action with actions that were pending before the Southern District of New York

6

at that time the transfer motion was filed.. These arguments have been rendered moot by the resolution of those disputes and the ruling of the MDL panel that defendant's case could not be consolidated with those in which Merrill Lynch was named as a defendant. MDL Transfer Order, Docket No. 90. Since consolidation with those cases being prosecuted in the Southern District of New York is no longer an option, this factor does not favor defendant's motion to transfer venue.

**V.    Local Interest in the Controversy**

The only argument made by either party on the issue of local interest is plaintiff's contention that California courts have a strong interest in enforcing California securities laws. This factor weighs against granting the motion to transfer.

**VI.   Relative Court Congestion and Time of Trial in Each Forum**

Transferring this case to the Southern District of New York would most likely result in some delay, but this factor does not play a significant role in the Court's decision. Additionally, there has been no showing that this district and the Southern District of New York differ as to court congestion.

**CONCLUSION**

Defendant has not established that transferring this case to the Southern District of New York would be more convenient to the parties and the witnesses and would promote the interests of justice. The only factor that weighs in favor transfer is the convenience of defendant, because it is headquartered in New York. However, this minimal added convenience is mitigated by the fact that defendant has offices distributed throughout the country, and would not be greatly inconvenienced by a trial in the Northern District of California. For the foregoing reasons and for good cause shown, the Court hereby DENIES defendant's motion to transfer venue. (Docket No. 27).

IT IS SO ORDERED.

Dated: April 13, 2010

SUSAN ILLSTON
United States District Judge