IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE ANSCHUTZ CORPORATION,<br><br>            Plaintiff,<br><br>    v.<br><br>MERRILL LYNCH AND CO. INC., ET AL.,<br><br>            Defendants.<br>_____/ | No. C 09-03780 SI<br><br>**ORDER DENYING MOTION FOR CERTIFICATION FOR INTERLOCUTORY APPEAL** |

Currently before the Court is a motion for certification for interlocutory appeal filed by defendants The McGraw Hill Companies, Inc. (doing business as Standard & Poors) and Fitch, Inc. (collectively, the "Rating Agencies") .[1]  That motion is set for hearing on June 3, 2011.  Pursuant to Civil Local Rule 7-1(b), the Court determines that the matter is appropriate for resolution without oral argument, and VACATES the hearing.  Having considered the papers submitted, and for good cause shown, the Court DENIES the motion.

**BACKGROUND**

Plaintiff, The Anschutz Corporation ("TAC"), brings this action to recover damages and for other relief resulting from its purchase of structured auction rate securities ("ARS") that were underwritten by defendant Deutsche Bank Securities Inc. ("DBSI") and rated by defendant Rating

---

[1] The motion for interlocutory appeal was filed by The McGraw-Hill Companies, Inc., but it was joined by Fitch, Inc.  *See* Docket Nos. 231, 236.

1 Agencies.[2] As relevant to this motion, plaintiff alleges that structured ARS, like the ones here, could
2 not issue and the credit rating agencies would not get paid unless the Rating Agencies provided a
3 pre-determined AAA rating for the securities. Therefore, an alleged conflict of interest developed such
4 that the Rating Agencies abandoned their independence and relaxed their rating criteria and procedures
5 in order to secure the business of the investment banks in rating these types of securities. *See* First
6 Amended Complaint ("FAC") ¶¶ 124-139.

Plaintiff alleges that the unregistered securities at issue could only be sold to Qualified Institutional Buyers (sometimes "QIBs"), like The Anschutz Corporation. *Id*., ¶¶ 180-181, 254, 268. The Ratings, therefore, were not intended for the general public but for a "very limited subset of investors." *Id*., ¶ 180. Plaintiff also alleges that the Rating Agencies worked with DBSI to structure the securities at issue, in an effort to secure the AAA ratings required for the securities to be marketed to Qualified Institutional Buyers. *Id.*, ¶125. Finally, given the highly complex and esoteric nature of the structured ARS being issued by DBSI, plaintiff alleges that the Rating Agencies knew that Qualified Institutional Buyers like the TAC would necessarily rely on the ratings. *Id*. ¶¶ 140-143, 180-181; *see also id.*, ¶¶ 254, 268. Nonetheless, plaintiff alleges, "the rating agencies knowingly, or through gross negligence, assigned investment-grade ratings to the vast majority of structured finance securities, including the complex auction rate securities such as those at issue in this action, without regard to whether the underlying security deserved an investment-grade rating and notwithstanding their knowledge that investors would equate an investment-grade rating with liquidity." *Id*. ¶ 143.

The Rating Agencies moved to dismiss the negligent misrepresentation claim against them, arguing that under the California Supreme Court's decision in *Bily v. Arthur Young & Co.*, 3 Cal. 4th 370 (1992), plaintiff could not allege that the thousands of QIBs who could purchase the securities at issue were a sufficiently narrow and circumscribed group to whom the Rating Agencies owed a duty. *See* Motion to Dismiss [Docket No. 131] at 32-33. This Court rejected that argument and found that plaintiff's allegations satisfied *Bily*, where the Rating Agencies had made a "special undertaking" and knew that the limited group of QIBs who could purchase the securities at issue would rely on the ratings.

---

[2] The factual background of this case was extensively discussed in the Court's prior order denying in part and granting in part defendants' motions to dismiss and strike. *See* Docket No. 224.

*See* Docket No. 224 at 30.

The Rating Agencies now seek permission to file an interlocutory appeal on that question, arguing that a decision from the Southern District of New York in *In re Merrill Lynch Auction Rate Secs. Litig.*, 2011 U.S. Dist. LEXIS 14053 (S.D.N.Y. Feb. 9, 2011) rejected the same argument in a factually indistinguishable case and, therefore, created a substantial ground for difference of opinion meriting the grant of interlocutory review.

## DISCUSSION

An interlocutory appeal of a non-final order may be certified if the district court determines that "such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir.1982). However, "Section 1292(b) is a departure from the normal rule that only final judgments are appealable, and therefore must be construed narrowly." *Robin James v. Price Stern Sloan, Inc.*, 283 F.3d 1064, 1067 n.6 (9th Cir. 2002). The purpose of the section is to "facilitate disposition of the action by getting a final decision on a controlling legal issue sooner, rather than later" in order to "save the courts and the litigants unnecessary trouble and expense." *United States v. Adam Bros. Farming, Inc.*, 369 F. Supp. 2d 1180, 1182 (C.D. Cal. 2004).

As an initial matter, the Court finds that the Rating Agencies have not demonstrated that a "controlling issue of law" is at stake in light of this Court's decision. The legal principle set out in *Bily* – that in order to owe a duty to a third-party, the defendant must have made a "special undertaking" and reasonably expected that a narrow and circumscribed group would rely on its representations – is well-settled. This Court, reviewing *Bily* and subsequent decisions, including *Nutmeg Securities, Ltd. v. McGladrey & Pullen*, 92 Cal. App. 4th 1435, 1445 (Cal. App. 2001) and *Glenn K. Jackson Inc. v. Roe*, 273 F.3d 1192, 1201 at n.3 (9th Cir. 2001), found that plaintiff had made sufficient allegations to demonstrate that the Rating Agencies made a "specific undertaking" in issuing the ratings. In addition to relying on plaintiff's allegations that the securities could only be marketed to the narrow and circumscribed group of QIBs, the Court found persuasive plaintiff's allegation that the Rating Agencies

3

1 understood the securities could not issue and could not be bought by QIBs unless they received the 2 highest ratings. The Court also relied on plaintiff's allegations that the Rating Agencies were involved 3 in the actual structuring of the securities at issue. Finally, the Court relied on the allegations that the 4 Agencies knew that the circumscribed group of QIBs had to rely on the ratings, given the highly 5 complex and esoteric nature of the structured ARS at issue. Whether the Rating Agencies owed QIBs 6 like plaintiff a duty under California law may be a "controlling question" – as if there is no duty, there 7 is no liability for the Rating Agencies – but it is not a "controlling question of law" under Section 8 1292(b). Instead, it is akin to a controlling question of fact, given the allegations made by plaintiff. 9 Given the established legal principle in *Bily*, the Court does not find that its application of that principle 10 to the allegations in this case is appropriate for interlocutory review.

11 Additionally, the Court finds that the Rating Agencies have failed to show there is a "substantial 12 ground for difference of opinion." The application of *Bily* to the facts of this case is not novel. *See* 13 *Nutmeg Securities, Ltd. v. McGladrey & Pullen*, 92 Cal. App. 4th 1435, 1445 (Cal. App. 2001) (class 14 of potential "IPO underwriters" "sufficiently 'narrow and circumscribed class of persons'" for purposes 15 of a duty of care under *Bily*).[3] The case relied on by the Rating Agencies to create a ground for 16 difference of opinion is the decision from the Southern District of New York in *In re Merrill Lynch* 17 *Auction Rate Secs. Litig*., 2011 U.S. Dist. LEXIS 14053 (S.D.N.Y. Feb. 9, 2011). In that decision, the 18 district court judge – in a footnote and without any analysis of *Bily* or citation to cases following *Bily* 19 – held that "the ratings were intended for QIBs generally. (Compl. 161.) That category is far from 20 'narrow and circumscribed'; thus, Plaintiff does not adequately allege that a duty existed." *Id*., at n. *36, 21 n.7 However, that one court in the Southern District of New York applied the same California legal 22 principle to the same facts and reached a different conclusion, does not demonstrate a "substantial" 23 ground for difference of opinion regarding the legal principle. *See, e.g., Couch*, 611 F.3d at 633 ("That 24 settled law might be applied differently does not establish a substantial ground for difference of 25 opinion."); *Union County v. Piper Jaffray & Co.*, 525 F.3d 643, 647 (8th Cir. 2008) (noting that a

---

[3] *See also Soderberg v. McKinney*, 44 Cal. App. 4th 1760, 1771 (Cal. App. 2d Dist. 1996) (*Bily* standard met where defendant appraiser "knew that a particular group or class of persons to which plaintiffs belonged – potential investors . . . – would rely on his report in the course of a specific type of transaction he contemplated – investing in a deed of trust secured by the appraised property.").

4

"sufficient number of conflicting and contradictory opinions" would provide substantial ground for disagreement).[4]

Finally, resolution of the question in favor of the Rating Agencies would not dispose of this action, as the claims against DBSI – as to which the Rating Agencies' conduct is inherently tied – would not be impacted. *Cf. In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (a question is controlling when "resolution of the issue on appeal could materially affect the outcome of litigation in the district court"). Nor would the Rating Agencies escape all expense if the decision of this Court were reversed on interlocutory appeal, because, as noted above, plaintiffs allege that "the rating agencies worked hand-in-hand with the investment banks . . . to structure the complex instruments so that they would receive the investment-grade ratings." FAC ¶ 125. The Rating Agencies conduct, therefore, would still be subject to extensive discovery, albeit as third-parties.

## CONCLUSION

For the foregoing reasons, the motion for interlocutory appeal is DENIED.

**IT IS SO ORDERED.**

Dated: June 1, 2011

SUSAN ILLSTON
United States District Judge

---

[4] As the Ninth Circuit recently recognized in *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010), "[c]ourts traditionally will find that a substantial ground for difference of opinion exists where 'the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented.'" (quoting 3 Federal Procedure, Lawyers Edition § 3:212 (2010)). Here, the circuits are not in disagreement and the question of law presented is not a novel one.